IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DAVID MAGERR | : | CIVIL ACTION |
|  | : |  |
| v. | : |  |
|  | : |  |
| CITY OF PHILADELPHIA | : | NO.  15-4264 |

## <u>MEMORANDUM</u>

**Padova, J.**                                                                                         **April 11, 2016**

 Plaintiff brings this action against his employer, the City of Philadelphia, alleging that he was subject to discrimination and a hostile work environment based on his sex, disability, and age, in violation of Title VII, the ADA, the ADEA, and the PHRA.  The City moves to dismiss the Complaint, except for the disability discrimination claim in violation of the ADA asserted in Count II, for failure to state a claim upon which relief can be granted.  For the following reasons, we grant the Motion to Dismiss in part and deny it in part.

## I. BACKGROUND

 The Complaint alleges the following facts.  Plaintiff David Magerr is a 56 year old man who has worked for the City of Philadelphia Department of Human Services since 1994.  (Compl. ¶¶ 9-10.)  Plaintiff was diagnosed with cancer in 1997 and is currently in remission.  (<u>Id.</u> ¶ 12.)  He suffers from severe anxiety.  (<u>Id.</u>)  Plaintiff has experienced discrimination in the workplace based on his cancer diagnosis, his anxiety, his age, and his sex.  (<u>Id.</u> ¶¶ 12-14, 20.)  One of his colleagues made comments to him that were sexist and discriminatory relating to his disability.  (<u>Id.</u> ¶ 14.)  Plaintiff's superiors would not meet with him about this colleague and took no action against her.  (<u>Id.</u> ¶¶ 15-16.)

When Plaintiff's department moved to a new office location in April 2013, Plaintiff was not provided with a computer, internet access, a telephone, or access to electronic files, which prevented him from completing his work. (Id. ¶¶ 17-18.) When he approached his supervisor, David Bruce, about the problem and requested a new or different assignment, Bruce responded that he "'would take [Plaintiff] to Personnel and lay him off.'" (Id. ¶ 19.) Plaintiff believed Bruce meant that he wanted to replace Plaintiff with someone younger with no health issues. (Id. ¶ 20.) In addition, because Plaintiff did not have assignments, he felt that he was being pushed out of his position and was being denied the opportunity to seek promotions or higher-level jobs. (Id. ¶¶ 21-22.)

In July 2013, Bruce told Plaintiff that "'he should transfer out and leave if he did not like it.'" (Id. ¶ 23.) Bruce also told Plaintiff that he "'pushed him under the bus'" by contacting the union for assistance. (Id.) Bruce also told a union representative that he was planning to lay off Plaintiff. (Id.) In September 2013, Plaintiff's union representative helped Plaintiff schedule a meeting with Bruce and another supervisor, Vanessa Williams, to discuss a new work assignment. (Id. ¶ 27.) At this meeting, Williams and Bruce claimed that Plaintiff's work was unsatisfactory. (Id.)

Count I of the Complaint asserts that Plaintiff was subjected to discrimination and a hostile work environment based on his sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Count II asserts that Plaintiff was subjected to discrimination and a hostile work environment based on his disability in violation of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.* Count III asserts that Plaintiff was subjected to discrimination and a hostile work environment based on his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*

Counts IV, V, and VI assert three state law claims of discrimination and a hostile work environment based on sex, age, and disability, respectively, in violation of the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. § 951 *et seq*.  Defendant moves to dismiss the Complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.   LEGAL STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  We take the factual allegations of the complaint as true and "construe the complaint in the light most favorable to the plaintiff." DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)).  Legal conclusions, however, receive no deference, as the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  Wood v. Moss, 134 S. Ct. 2056, 2065 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'"  Warren

Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'"  W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555).

## III.   DISCUSSION

### A.   Exhaustion of Administrative Remedies

Defendant contends that the Complaint should be dismissed because Plaintiff has not exhausted his administrative remedies as to his claims.  Before commencing an ADEA, ADA, or Title VII action in federal court, a plaintiff must exhaust his administrative remedies by filing a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and receiving a right-to-sue letter from the EEOC after it investigates the charge.[1]  29 U.S.C. § 626(d)(1) (stating that a civil action asserting a violation of the ADEA cannot be filed

---

[1] Title VII provides that, for a plaintiff to exhaust his administrative remedies, he must file an administrative charge with the EEOC within 180 days or, if he first files a claim "with a parallel state agency . . . the period for filing the charge with the EEOC is extended to 300 days from the date of the alleged unlawful employment practice."  Burgh v. Borough Council, 251 F.3d 465, 469-70 (3d Cir. 2001) (citing 42 U.S.C. § 2000e-5(e)(1)).  The complainant must then allow the EEOC to investigate the claim for at least 180 days.  Id. at 470.  After this period of time elapses, the complainant will either receive a right-to-sue letter or can request one from the EEOC.  Id. (citation omitted).  Receipt of this letter "indicates that a complainant has exhausted administrative remedies."  Id. (citation omitted).  The same rules apply to claims arising under the ADEA and ADA.  See Ruehl v. Viacom, Inc., 500 F.3d 375, 382 n.9 (3d Cir. 2007) (explaining that this procedure also applies to claims brought pursuant to the ADEA (quoting 29 U.S.C. § 626(d))); and Churchill v. Star Enters., 183 F.3d 184, 190 (3d Cir. 1999) (explaining that claims brought pursuant to the ADA follow the same process (citing Bishop v. Okidata, Inc., 864 F. Supp. 416, 424 (D.N.J. 1994))).

until sixty days after the plaintiff filed a charge alleging discrimination with the EEOC); Itiowe v. NBC Universal, Inc., 556 F. App'x 126, 128 (3d Cir. 2014) (stating that the ADA requires a plaintiff to pursue administrative remedies with the EEOC prior to filing suit (citing Churchill v. Star Enters., 183 F.3d 184, 190 (3d Cir. 1999))); 42 U.S.C. § 2000e-5 (setting forth the procedure for filing a charge of discrimination with the EEOC asserting a violation of Title VII and the requirement that a plaintiff exhaust those administrative remedies prior to filing suit). "Similarly, before filing a PHRA claim in court, an employee must file a complaint with the PHRC."[2] Huggins v. Coatesville Area Sch. Dist., 452 F. App'x 122, 126 (3d Cir. 2011) (citing Burgh v. Borough Council, 251 F.3d 465, 471 (3d Cir. 2001)).  "Pennsylvania plaintiffs may dual-file a charge with both agencies."  Wilson v. Gerber, Civ. A. No. 11-6517, 2013 WL 3878686, at *5 (E.D. Pa. July 26, 2013) (citing Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997)).  The exhaustion requirement gives the EEOC a chance to settle the case and puts the employer "on notice of the claims likely to be filed against it."  Barzanty v. Verizon Pa., Inc., 361 F. App'x 411, 414 (3d Cir. 2010) (citing Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996); and 42 U.S.C. § 2000e-5(b) and (e)(1)).

The record of this Motion includes the amended complaint Plaintiff filed with the Pennsylvania Human Relations Commission ("PHRC") and the right-to-sue letter issued by the

---

[2] A PHRA complaint must be filed within 180 days of the alleged discriminatory act. Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997) (citing 43 Pa. Stat. Ann. §§ 959(a) and 962).  A party that waits "one year after filing charges with the PHRC for alleged PHRA violations [has] the option to forego the state administrative process and file suit in court."  Churchill, 183 F.3d at 190 (citing 43 Pa. Stat. Ann. § 962(c)(1)).  "Importantly, and unlike under Title VII, notice of the right to sue is not required in order to bring the PHRA action."  Burgh, 251 F.3d at 471 (citing Snyder v. Pa. Ass'n of Sch. Retirees, 566 A.2d 1235, 1240 (Pa. Super. Ct. 1989)).

EEOC in connection therewith.[3]  (Pl.'s Resp. Exs. A, C.)  Based on Plaintiff's EEOC right-to-sue letter, dated May 1, 2015, we conclude that Plaintiff exhausted his administrative remedies with respect to his federal and PHRA claims.  (Id. Ex. C.)  Consequently, we deny Defendant's Motion insofar as it seeks dismissal of the Complaint for failure to exhaust administrative remedies.

      B.      Sex, Disability, and Age Discrimination Claims

Defendant argues that the Complaint, insofar as it asserts claims of discrimination, should be dismissed because it fails to allege that Plaintiff was subject to an adverse employment action, as required for claims asserting violations of Title VII, the ADA, the ADEA, and the PHRA. Defendant also moves to dismiss all of Plaintiff's claims with the exception of Count II because the Complaint does not allege causes of action for discrimination in violation of Title VII, the ADEA, and the PHRA that otherwise satisfy the standards for such claims set forth in Price

---

[3] On a motion to dismiss, we may consider "matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer, 605 F.3d at 230 (citation omitted).  Thus, "[i]n resolving a Rule 12(b)(6) motion to dismiss, a court may properly look beyond the complaint to matters of public record including court files, records and letters of official actions or decisions of government agencies and administrative bodies . . . ." Arizmendi v. Lawson, 914 F. Supp. 1157, 1160 (E.D. Pa. 1996) (citations omitted); Concha v. Perfecseal, Inc., Civ. A. No. 13-5709, 2014 WL 4634965, at *1 and n.1 (E.D. Pa. Sept. 15, 2014) (considering an EEOC letter attached to plaintiff's response to a Rule 12(b)(6) motion because it is an administrative filing (citing Tlush v. Mfrs. Res. Ctr., 315 F. Supp. 3d 650, 654 (E.D. Pa. 2002))); Wardlaw v. City of Philadelphia, Civ. A. No. 09-3981, 2011 WL 1044936, at *3 (E.D. Pa. Mar. 21, 2011) (considering plaintiff's EEOC right-to-sue letters and PHRC charges because they are undisputedly authentic (citations omitted)). Specifically, we may consider the administrative record before the EEOC on a Rule 12(b)(6) motion to determine whether administrative remedies have been exhausted.  See Lightcap-Steele v. KidsPeace Hosp., Inc., Civ. A. No. 05-2578, 2006 WL 1147476, at *5 and n.2 (E.D. Pa. Apr. 27, 2006) (collecting cases where district courts in this Circuit examined the EEOC record to determine whether plaintiffs had exhausted their administrative remedies and whether such exhaustion was timely).  Here, the EEOC right-to-sue letter indicates that the EEOC is adopting the findings of the PHRC, meaning the PHRA complaint is part of the EEOC record.  (Pl.'s Resp. Ex C.)

Waterhouse v. Hopkins, 490 U.S. 228 (1989), or McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title I of the ADA bars discrimination against qualified individuals "on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The PHRA provides that:

> It shall be an unlawful discriminatory practice . . . [f]or any employer because of . . . age, sex, . . . or non-job related handicap or disability . . . to refuse to hire or employ or . . . to otherwise discriminate against such individual . . . with respect to compensation, hire, tenure, terms, conditions or privileges of employment . . . .

43 Pa. Stat. Ann. § 955(a).

Employment discrimination claims can be advanced either through direct evidence that the employer's decision was motivated by discrimination or through indirect evidence that creates an inference of discrimination. Where there is direct evidence of discrimination, courts apply the theory set forth in Price Waterhouse, also referred to as the mixed-motives theory. Under Price Waterhouse, if a plaintiff "offers 'direct evidence' of unlawful discrimination . . . the plaintiff need only show that the unlawful motive was a substantial motivating factor in [the employer's] decision" to take an adverse employment action against the plaintiff. Miller v.

CIGNA Corp., 47 F.3d 586, 594 (3d Cir. 1995) (discussing Price Waterhouse concurrence by Justice O'Connor); see also Accurso v. Infra-Red Servs., Inc., -- F. Supp. 3d --, 2016 WL 930686, at *4 (E.D. Pa. Mar 11, 2016).  If the plaintiff satisfies this burden, "'[b]oth the burden of production and the risk of non-persuasion are shifted to the defendant who . . . must persuade the factfinder that even if the discrimination was a motivating factor in the adverse employment decision, it would have made the same employment decision regardless of its discriminatory animus.'"  Connelly v. Lane Constr. Corp., 809 F.3d 780, 787 n.5 (3d Cir. 2016) (second alteration in original) (quoting Armbruster v. Unisys Corp., 32 F.3d 768, 778 (3d Cir. 1994)).

Where there is no direct evidence of discrimination, we analyze a complaint's discrimination claims pursuant to the burden-shifting framework set forth in McDonnell Douglas.  "Under that framework, the plaintiff bears the initial burden of establishing a prima facie claim of employment discrimination . . . ."  Greene v. V.I. Water & Power Auth., 557 F. App'x 189, 195 (3d Cir. 2014) (citing Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003)).  "[T]he burden [then] shifts to the employer to 'articulate some legitimate, nondiscriminatory reason for the'" adverse employment action.  Sarullo, 352 F.3d at 797 (quoting McDonnell Douglas, 411 U.S. at 802).  "The plaintiff must then establish by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination . . . ."  Id. (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); and McDonnell Douglas, 411 U.S. at 804).  A complaint asserting a prima facie case of employment discrimination in violation of Title VII or the ADEA must allege facts that, if true, establish the following elements: "(1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position [he held]; (3) the plaintiff suffered an adverse employment action . . . ; and (4) the adverse employment action occurred under circumstances that could give

rise to an inference of intentional discrimination."[4] Greene, 557 F. App'x at 195 (citing Burton v. Teleflex, Inc., 707 F. 3d 417, 426 (3d Cir. 2013); and Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008)); see also McDonnell Douglas, 411 U.S. at 802. Similarly, in order to state a prima facie case of disability discrimination under the ADA, a complaint must allege that the plaintiff "(1) has a 'disability,' (2) is a 'qualified individual,' and (3) has suffered an adverse employment action because of that disability." Turner v. Hershey Chocolate USA, 440 F.3d 604, 611 (3d Cir. 2006) (citing Buskirk v. Apollo Metals, 307 F.3d 160, 166 (3d Cir. 2002); and Gaul v. Lucent Techs. Inc., 134 F.3d 576, 580 (3d Cir. 1998)).

"Under either theory of discrimination, the plaintiff must establish that [his] protected status was a factor in the employer's challenged action." Connelly, 809 F.3d at 788. "The difference is in the degree of causation that must be shown: in a 'mixed-motive' case, the plaintiff must ultimately prove that [his] protected status was a 'motivating' factor, whereas in a non-mixed-motive or 'pretext' case, the plaintiff must ultimately prove that [his] status was a 'determinative' factor." Id. (citing Watson v. Se. Pa. Transp. Auth., 207 F.3d 207, 214-20 (3d Cir. 2000)).

The standards for proving sex, disability, and age discrimination claims under the PHRA are identical to those under Title VII, the ADA, and the ADEA. See Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 n.2 (3d Cir. 2009) ("The proper analysis under Title VII and the Pennsylvania Human Relations Act is identical, as Pennsylvania courts have

---

[4] The requirements for stating a prima facie case of a violation of the ADEA are identical to that for Title VII claims, except that a plaintiff can only satisfy the fourth element of a prima facie case under the ADEA by showing that his employer replaced him with someone "sufficiently younger to support an inference of discriminatory animus." Smith v. City of Allentown, 589 F.3d 684, 689-90 (3d Cir. 2009) (citing Potence v. Hazleton Area Sch. Dist., 357 F.3d 366, 370 (3d Cir. 2004)).

construed the protections of the two acts interchangeably." (internal quotation omitted)); Bialko v. Quaker Oats Co., 434 F. App'x 139, 141-42 n.5 (3d Cir. 2011) ("The analytical framework used to evaluate a disability discrimination claim under the PHRA is effectively indistinguishable from that under the ADA, thus allowing courts to dispose of both ADA and PHRA claims on the same grounds." (citing Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002))); and Fasold v. Justice, 409 F.3d 178, 184 n.8 (3d Cir. 2005) (interpreting "the ADEA and PHRA as applying identically . . . and as being governed by the same set of decisional law" (internal quotation omitted)).  Accordingly, we analyze Plaintiff's PHRA claims together with his Title VII, ADA, and ADEA claims.

 1. Adverse Employment Action

Defendant contends that the Complaint does not allege facts that would, if true, establish that Plaintiff suffered an adverse employment action as required for discrimination claims brought pursuant to Title VII, the ADA, the ADEA, and the PHRA under either the mixed-motives or burden-shifting frameworks.  The United States Court of Appeals for the Third Circuit has "defined 'an adverse employment action' under Title VII as an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'"  Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004) (quoting Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001)).  The same definition applies in cases brought under the ADA and the ADEA.  Cunningham v. Nordisk, 615 F. App'x 97, 100 (3d Cir. 2015) (applying the Storey definition to ADA claims (quoting Storey, 390 F.3d at 764)); Swain v. City of Vineland, 457 F. App'x 107, 110 (3d Cir. 2012) (applying the Storey "serious and tangible" definition to an ADEA claim (citing Storey, 390 F.3d at 764)).  "Although direct economic harm is an important indicator of a tangible adverse employment action, it is not the

10

sine qua non." Durham Life Ins. Co. v. Evans, 166 F.3d 139, 153 (3d Cir. 1999). "If an employer's act substantially decreases an employee's earning potential and causes significant disruption in his or her working conditions, a tangible adverse employment action may be found." Id. (citation omitted). However, "actions such as lateral transfers and changes of title or reporting relationships have generally been held not to constitute adverse employment actions." Walker v. Centocor Ortho Biotech, Inc., 558 F. App'x 216, 219 (3d Cir. 2014) (citing Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). Additionally, the "'mere utterance of an . . . epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate" these statutes. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (alteration in original) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)).

The Third Circuit has also "indicated that 'a discrimination analysis must concentrate not on individual incidents, but on the overall scenario,'" and adverse employment actions should therefore be considered in the aggregate. Shaner v. Synthes, 204 F.3d 494, 503 n.9 (3d Cir. 2000) (quoting Woodson, 109 F.3d at 921). Consequently, while we analyze each employment action alleged in the Complaint individually, "whether the [allegations of fact are] sufficient [is] based on the whole picture." Woodson, 109 F.3d at 921 (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1484 (3d Cir. 1990)).

Here, the Complaint alleges that, after Plaintiff's department moved locations in April 2013, he "was not provided with a computer, Internet access, work telephone" or access to the department's internal document drive, which meant that he was "unable to complete work assignments." (Compl. ¶¶ 17-18.) As of June 2013, Plaintiff "did not have much of an assignment . . . and quite often was given very little to do." (Id. ¶ 21.) Plaintiff did not receive

internet access until August 2013 and did not receive a work telephone until October 2013.  (Id. ¶¶ 26, 28.)   The Complaint also alleges that Bruce would not provide Plaintiff "with any opportunity for advancement or improvement in his position so that [he] could not seek better assignments, higher-level jobs or promotion."   (Id. ¶ 22.)   The Complaint further alleges that "Plaintiff has not been given the opportunity to advance in his position or be placed in a position for increases in grade and salary or promotion." (Id. ¶ 30.)

Viewing the allegations as a whole, we conclude that the Complaint sufficiently alleges that Plaintiff's working conditions were tangibly and seriously altered, and that he therefore suffered an adverse employment action, because his employer "cause[d] significant disruption in his . . . working conditions," Durham, 166 F.3d at 153 (citation omitted), "seriously and tangibly altered [Plaintiff's] ability to perform the job[,]"  Walker, 558 F. App'x at 219 (citing Storey, 390 F.3d at 764), and denied him the opportunity for advancement or professional growth.[5]  See Albright v. City of Philadelphia, 399 F. Supp. 2d 575, 587-88 (E.D. Pa. 2005) (finding that denying substantial training and overtime opportunities to a police officer are adverse employment actions).  Consequently, we deny Defendant's Motion insofar as it seeks dismissal

---

[5] The Complaint also alleges that Plaintiff's supervisors gave him a negative performance review, even though this evaluation was not formalized in writing and was not communicated to Plaintiff until he asked to discuss his work assignment.  (Compl. ¶ 27.)  However, a negative performance review, by itself, is not an adverse employment action.  See Weston v. Pennsylvania, 251 F.3d 420, 431 (3d Cir. 2001) (holding that written reprimands placed in a personnel file, without more, do not constitute adverse employment actions because they do not create a "material change in the terms or conditions of [the plaintiff's] employment"), overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006). Here, the Complaint only alleges that Plaintiff was told that his work was not satisfactory.  (Compl. ¶ 27.)  The Complaint does not allege that Plaintiff suffered adverse consequences because of this review.  Therefore, we conclude that this allegation is not sufficient to plausibly allege an adverse employment action based on Plaintiff's performance review.

of the Complaint's claims of discrimination for failing to allege that Plaintiff experienced an adverse employment action.

### 2.      Direct Evidence of Discrimination

Defendant also moves to dismiss the discrimination claims asserted in Counts I, III, IV, V, and VI because the Complaint does not allege direct evidence of discrimination sufficient to plausibly state a claim of discrimination pursuant to the mixed-motives theory set forth in Price Waterhouse.  Specifically, Defendant maintains that we should dismiss Plaintiff's claims of discrimination brought pursuant to Title VII, the ADEA, and the PHRA because the Complaint does not allege that Bruce or any other City supervisor made any comments or took any actions that would constitute direct evidence of discrimination.[6]

Direct evidence of discrimination is evidence that "'demonstrates that the decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision.'" Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 269 (3d Cir. 2010) (quoting Walden v. Georgia-Pacific Corp., 126 F.3d 506, 513 (3d Cir. 1997)).  This evidence "must be 'so revealing of [discriminatory] animus that it is unnecessary to rely on the [McDonnell Douglas] burden-shifting framework, under which the burden of proof remains with the plaintiff.'" Id. (alterations in original) (quoting Walden, 126 F.3d at 512).  "Thus, direct evidence must satisfy two requirements.  First, the evidence must be strong enough 'to permit the factfinder to infer that a

---

[6] Defendant does not seek dismissal of Plaintiff's ADA claim on this ground.  Therefore, we analyze this argument with respect to Plaintiff's Title VII, ADEA, and PHRA claims for sex and age discrimination, as well as Plaintiff's discrimination claim based on disability under the PHRA, but not Plaintiff's claim that he was discriminated against on the basis of his disability in violation of the ADA.

discriminatory attitude was more likely than not a motivating factor in the [defendant's] decision.'  Second, the evidence must be connected to the decision being challenged by the plaintiff."  Id. (alteration in original) (quoting Walden, 126 F.3d at 513; and citing Walden, 126 F.3d at 515-16).  However, derogatory comments or "stray remarks in the workplace" that are unrelated to employment decisions, even when uttered by decisionmakers, do not constitute direct evidence of discrimination.  See Price Waterhouse, 490 U.S. at 277 (O'Connor, J., concurring).  Therefore, a plaintiff attempting to prove discrimination with direct evidence faces a "high hurdle."  Walden, 126 F.3d at 513.

The Complaint contains only one allegation indicating that someone explicitly mentioned Plaintiff's protected characteristics.  The Complaint alleges that Plaintiff's colleague Kathleen Rainey, "made derogatory statements about [him] which were sexist and discriminatory in nature relating to [his] disability."  (Compl. ¶ 14.)  The Complaint, however, does not allege that Rainey was a decision maker with respect to Plaintiff's employment or that these statements were connected to any decisions make with respect to Plaintiff's employment.  In addition, the Complaint does not allege that Plaintiff's immediate supervisor, David Bruce, made any statements or took any action that would indicate that he a discriminatory attitude or that his actions were motivated by a discrimination attitude.  While the Complaint alleges that Plaintiff perceived Bruce as having a discriminatory attitude, it does not describe any specific incident or action taken by Bruce that would support Plaintiff's perception.  (See id. ¶¶ 20, 25, 29.)

We conclude, accordingly, that the Complaint does not allege any facts that, if true, would constitute direct evidence that decisionmakers substantially relied on Plaintiff's sex, age, or disability when reaching an employment decision, as required to state a claim of discrimination based on direct evidence pursuant to Price Waterhouse.  Therefore, we grant the

Motion to Dismiss as to the discrimination claims asserted in Counts I, III, IV, V, and VI insofar as those claims rely on the mixed-motive framework.

### 3.   Indirect Evidence of Intentional Discrimination

Defendant argues that Counts I, III, IV, V, and VI of the Complaint should be dismissed because they fail to allege facts that would plausibly state a prima facie case of discrimination pursuant to McDonnell Douglas.[7]  Specifically, Defendant contends that the Complaint fails to allege facts that "give rise to an inference of unlawful discrimination," Greene, 557 F. App'x at 195, by identifying "a similarly situated individual outside of the protected class[] who engaged in the same conduct but was treated more favorably."  Mandel v. M & Q Packaging Corp., 706 F.3d 157, 170 (3d Cir. 2013) (citing Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 358-59 (3d Cir. 1999)).

In order to plausibly allege that an "adverse employment action occurred under circumstances that could give rise to an inference of intentional discrimination," Greene, 557 F. App'x at 195 (citations omitted), a complaint may either: (1) allege that "similarly situated employees who . . . were not members of the same protected class . . . were treated more favorably under similar circumstances"; or (2) allege facts that "otherwise show[] a causal nexus between [the employee's] membership in a protected class and the adverse employment action." Id. (citing Sarullo, 352 F.3d at 797 n.7).  The Third Circuit has explained that "[w]hile 'similarly situated' does not mean identically situated, the plaintiff [and the comparators] must nevertheless

---

[7]  Defendant did not move to dismiss Plaintiff's ADA claim in Count II on this basis. Therefore we analyze this argument with respect to Plaintiff's Title VII, ADEA, and PHRA claims only.

be similar in 'all relevant respects.'"  <u>Opsatnik v. Norfolk S. Corp.</u>, 335 F. App'x 220, 222-23 (3d Cir. 2009) (quoting <u>Holifield v. Reno</u>, 115 F.3d 1555, 1562 (11th Cir. 1997)).  Relevant factors "often include[] a 'showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them."  <u>Id.</u> at 223 (quoting <u>Radue v. Kimberly-Clark Corp.</u>, 219 F.3d 612, 617-18 (7th Cir. 2000); and citing <u>Johnson v. Kroger Co.</u>, 319 F.3d 858, 867 (6th Cir. 2003)).

In this case, the Complaint does not identify any employees who were treated more favorably than Plaintiff or any employees who were similarly situated to Plaintiff but were not members of the same protected class.  Instead, the Complaint only includes conclusory statements that Plaintiff was discriminated against based on his disability, sex, and age.  For example, the Complaint alleges that the "City has discriminated against [Plaintiff] on the basis of his disability . . . by denying him the same terms and conditions of employment available to other employees."  (Compl. ¶ 41.)  The Complaint also alleges that the "City has discriminated against [Plaintiff] on the basis of his sex . . . by denying hi[m] the same terms and conditions of employment available to female employees."  (<u>Id.</u> ¶ 36.)  "Such boilerplate language," however, does not adequately allege that similarly situated employees outside of Plaintiff's protected classes were treated more favorably than Plaintiff.  <u>Barthold v. Briarleaf Nursing & Convalescent Ctr. Nursing Home</u>, Civ. A. No. 13-2463, 2014 WL 2921534, at *3 (E.D. Pa. June 27, 2014) (dismissing ADEA and Title VII claims because the complaint only alleged that plaintiff "was subjected to discipline . . . for which other similarly situated Caucasian and younger employees were not disciplined" (internal quotation omitted)).  Therefore, we find that the Complaint does not allege facts that can support an inference of sex, age, or disability

discrimination based on a showing that similarly situated employees outside of Plaintiff's protected classes were treated more favorably.

Consequently, in order to establish a prima facie case of discrimination, the Complaint must allege facts that "otherwise show[] a causal nexus between [Plaintiff's] membership in a protected class and the adverse employment action." Greene, 557 F. App'x at 195 (citation omitted). The Complaint alleges that Plaintiff believed that Bruce "wanted to rid the office of [Plaintiff] and replace him with a younger person with no health issues," and that Plaintiff believed that Bruce treated "him harshly and did not want to deal with [his] disability of anxiety disorder." (Id. ¶¶ 20, 25.) However, "[a] plaintiff's subjective belief that [a protected characteristic] played a role in an employment decision is not, alone, sufficient to establish an inference of discrimination." Wilson v. Blockbuster, Inc., 571 F. Supp. 2d 641, 647 (E.D. Pa. 2008) (citing Jones v. United Parcel Serv., 214 F.3d 402, 407 (3d Cir. 2000)). Consequently, we conclude that the Complaint fails to allege facts that, if true, would plausibly establish that Plaintiff was subjected to an adverse employment action because of disability discrimination as required by the McDonnell Douglas framework. Therefore, we grant Defendant's Motion to Dismiss as to Count VI insofar as this count asserts a claim of discrimination based on Plaintiff's disability in violation of the PHRA.

The Complaint also alleges that Plaintiff perceived that Bruce wanted to hire a younger person to replace Plaintiff. (Compl. ¶ 20). However, as we noted above, Plaintiff's subjective belief is insufficient to establish an inference of discrimination.[8] See Wilson, 571 F. Supp. 2d at

---

[8] Moreover, the Complaint does not allege that Plaintiff was replaced by a younger employee. As stated in footnote 4, a plaintiff asserting an age discrimination claim must allege that the employer replaced him with someone "sufficiently younger to support an inference of discriminatory animus." Smith, 589 F.3d at 689-90 (citation omitted). In this case, however, the

647 (citing Jones, 214 F.3d at 407).  Therefore, we conclude that the Complaint fails to allege sufficient facts to plausibly allege the fourth element of a prima facie case of age discrimination under the McDonnell Douglas framework.  Consequently, we grant Defendant's Motion to Dismiss as to Counts III and V to the extent these counts assert a claim of age discrimination in violation of the ADEA and the PHRA.

The Complaint further alleges that one of Plaintiff's colleagues "made derogatory statements about [Plaintiff] which were sexist."  (Compl. ¶ 14.)  The Complaint does not allege that this colleague had any decision-making role with respect to Plaintiff, that anyone involved in decision-making regarding Plaintiff heard these statements, or that said statements played a part in an employment decision regarding Plaintiff.  See Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight . . . ."); see also Clair v. Agusta Aerospace Corp., 592 F. Supp. 2d 812, 819 (E.D. Pa. 2009) (explaining that a plaintiff can show a causal nexus between an adverse employment action and discriminatory animus where "'those exhibiting discriminatory animus influenced or participated in the decision'" (quoting Abramson v. William Paterson College of N.J., 260 F.3d 265, 285-86 (3d Cir. 2001))).  Therefore, we conclude that the Complaint does not allege sufficient facts to plausibly state the fourth element of a prima facie case of sex discrimination under the McDonnell Douglas framework.  Consequently, we grant Defendant's Motion to Dismiss as to Counts I and IV insofar as these counts assert claims of discrimination based on sex in violation of Title VII and the PHRA.

---

Complaint does not allege that Plaintiff was terminated or left his position and therefore does not allege that Plaintiff was replaced by a younger employee.

In sum, Counts I, III, IV, V, and VI of the Complaint are dismissed insofar as they allege discrimination based on sex, age, and disability in violation of Title VII, the ADEA, and the PHRA because these counts neither allege sufficient facts that, if true, would establish that Plaintiff was subjected to discrimination that could be proven under the Price Waterhouse framework, nor allege sufficient facts to plausibly support an inference of discrimination pursuant to McDonnell Douglas.

     C.      Hostile Work Environment Claims

Defendant argues that the Complaint should be dismissed because it fails to plausibly allege that Plaintiff was subjected to a hostile work environment in violation of Title VII, the ADA, the ADEA, and the PHRA.  Title VII prohibits sexual harassment that is "sufficiently severe or pervasive" to effectively alter the terms and conditions of employment.  Meritor, 477 U.S. at 67.  Consequently, in order to establish that the employer is liable for a hostile work environment, the complaint must allege that the plaintiff's "work environment was so pervaded by discrimination that the terms and conditions of employment were altered."  Vance v. Ball State Univ., 133 S. Ct. 2434, 2441 (2013) (citing Harris, 510 U.S. at 21).  To state a facially plausible hostile work environment claim pursuant to Title VII, the complaint must allege that "'(1) the employee suffered intentional discrimination because of [his] sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected [him]; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability.'"  Huston, 568 F.3d at 104 (quoting Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001), overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)).

The Third Circuit has assumed without specifically deciding that claims may be brought pursuant to the ADA and the ADEA for a hostile work environment under substantially the same framework as a Title VII hostile work environment claim.  See Walton v. Mental Health Ass'n of Se. Pa., 168 F.3d 661, 666-67 (3d Cir. 1999) (assuming, without deciding, that plaintiff can maintain a hostile work environment in violation of the ADA under the same framework as under Title VII (citations omitted)); and Slater v. Susquehanna Cty., 465 F. App'x 132, 138 (3d Cir. 2012) ("We assume, without deciding, that the ADEA makes available a hostile work environment claim for age-based discrimination, analyzed under the same standards as a Title VII hostile work environment claim." (citations omitted)).  Thus, to plausibly state a hostile work environment claim pursuant to the ADA, a complaint must allege that:

> (1) [Plaintiff] is a qualified individual with a disability under the ADA; (2) [he] was subject to unwelcome harassment; (3) the harassment was based on [his] disability . . .; (4) the harassment was sufficiently severe or pervasive to alter the conditions of [his] employment and to create an abusive working environment; and (5) that [his employer] knew or should have known of the harassment and failed to take prompt effective remedial action.

Walton, 168 F.3d at 667 (citing McConathy v. Dr. Pepper/Seven Up Corp., 131 F.3d 558, 563 (5th Cir. 1998); and Vendetta v. Bell Atl. Corp., Civ. A. No. 97-4838, 1998 WL 575111, at *9 (E.D. Pa. Sept. 8, 1998)).  A hostile work environment claim brought pursuant to the ADEA similarly requires allegations of: "(1) intentional discrimination because of age, which is (2) pervasive and regular, and which (3) has detrimental effects that (4) would be suffered by [a] reasonable person of the same age in the same position; and (5) respondeat superior liability exists."  Tumolo v. Triangle Pac. Corp., 46 F. Supp. 2d 410, 412 (E.D. Pa. 1999) (citing Robinson v. City of Pittsburgh, 120 F.3d 1286, 1304 n.19 (3d Cir. 1997), abrogated in part on other grounds by White, 548 U.S. at 67).

To constitute a hostile work environment, "[t]he discrimination must be 'because of' the employee's protected status or activity." Culler v. Sec'y of U.S. Veterans Affairs, 507 F. App'x 246, 249 (3d Cir. 2012) (citations omitted). Here, the Complaint alleges that Bruce harassed and insulted Plaintiff, threatened to dismiss Plaintiff, and made comments about Plaintiff in front of other employees. (Compl. ¶¶ 19, 23, 32.) However, as we indicated above, the Complaint does not allege any facts that, if true, would reveal that Bruce's actions were motivated by a discriminatory attitude based on sex, age, or disability. Instead, the Complaint contains unsupported allegations that Plaintiff believed that Bruce's actions were motivated by such an attitude. (See id. ¶¶ 20, 22, 25, 29.) However, such "'unadorned, . . . accusation[s]' which 'tender[] naked assertions devoid of further factual enhancement'" are insufficient to state a plausible claim that Plaintiff was subjected to a hostile work environment. Eldeeb v. Potter, 675 F. Supp. 2d 521, 523-24 (E.D. Pa. 2009) (quoting Iqbal, 556 U.S. at 678). We therefore conclude that the Complaint does not plausibly allege facts that, if true, would show that Plaintiff was intentionally discriminated against because of his sex, age, or disability.

Even if the Complaint plausibly alleged that Plaintiff suffered intentional discrimination based on his sex, age, or disability, the Complaint does not allege that such discrimination was severe or pervasive. As explained above, a complaint asserts a facially plausible hostile work environment claim only if the discrimination was alleged to be "sufficiently severe or pervasive" to effectively alter the terms and conditions of the plaintiff's employment. Meritor, 477 U.S. at 67. To determine whether harassment is sufficiently severe or pervasive to create a hostile work environment, we consider "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Jensen v. Potter, 435 F.3d 444,

451 (3d Cir. 2006) (quoting <u>Harris</u>, 510 U.S. at 23), <u>overruled in part on other grounds by</u> <u>White</u>, 548 U.S. at 67.  While "[n]o one factor is dispositive, and the analysis must focus on the 'totality of the circumstances,'" the conduct must still be "severe or pervasive."  <u>Id.</u> at 451-52 (quoting <u>Andrews</u>, 895 F.2d at 1482).  "Occasional insults, teasing, or episodic instances of ridicule are not enough; they do not 'permeate' the workplace and change the very nature of the plaintiff's employment."  <u>Id.</u> at 451 (citing <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998); and <u>Harris</u>, 510 U.S. at 21).  Instead, to be "pervasive," the incidents "'must be more than episodic; they must be sufficiently continuous and concerted.'"  <u>Faragher</u>, 524 U.S. at 787 n.1 (quoting <u>Carrero v. N.Y.C. Hous. Auth.</u>, 890 F.2d 569, 577 (2d Cir. 1989)).

The Complaint alleges one incident of harassment based on Plaintiff's sex.  This incident involved a coworker who allegedly "made derogatory statements about [Plaintiff] which were sexist."  (Compl. ¶ 14.)  The Complaint includes no further description of those statements.  We conclude that this single, isolated incident, which is not alleged to have included a physical threat, is insufficient to plausibly allege a hostile work environment claim.  <u>See</u> <u>Benny v. Pa.</u>, <u>Dep't of Corr., State Corr. Inst. at Somerset</u>, 211 F. App'x 96, 97 (3d Cir. 2006) (holding that "sporadic incidents of sexually inappropriate language . . . do not comprise an objectively hostile work environment" (citing <u>Harris</u>, 510 U.S. at 19-20; and <u>Meritor</u>, 477 U.S. at 60-61)); <u>see also</u> <u>Harris</u>, 510 U.S. at 23 (identifying factors to determine when harassment is severe or pervasive, including "whether it is physically threatening or humiliating, or a mere offensive utterance").  Therefore, we grant Defendant's Motion to Dismiss insofar as it seeks dismissal of Plaintiff's claims that he was subjected to a hostile work environment in violation of Title VII and the PHRA in Counts I and IV.

The Complaint contains the following allegations related to age discrimination.  Plaintiff asked for a new assignment, and Bruce responded that he "'would take [Plaintiff] to Personnel and lay him off.'" (Compl. ¶ 19.)  "Plaintiff perceived Bruce's response as discriminatory, that he apparently wanted to rid the office of [Plaintiff] and replace him with a younger person with no health issues."  (Id. ¶ 20.)  Even if we infer that Plaintiff's perception was correct, we conclude that these allegations would not constitute severe and pervasive discrimination based on Plaintiff's age.  See, e.g., Mercer v. Se. Pa. Trans. Auth., 26 F. Supp. 3d 432, 445 (E.D. Pa. 2014) (noting that one incident of harassment is insufficient to create a hostile work environment (citing Caver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005))); and Boandl v. Geithner, 752 F. Supp. 2d 540, 572 (E.D. Pa. 2010) (finding that plaintiff failed to allege a hostile work environment because plaintiff only "describe[d] conduct that was rude, undoubtedly insulted him, and caused him distress," and did not allege that there was physical contact, that his supervisor made specific discriminatory statements, or that his supervisor's conduct comprised more than a few isolated incidents).  Consequently, we grant Defendant's Motion to Dismiss as to Plaintiff's claims that he was subjected to a hostile work environment in violation of the ADEA and the PHRA in Counts III and V.

In addition, the Complaint alleges only a few incidents in which Plaintiff perceived that he was being discriminated against because of his disability.  Specifically, on June 28, 2013, Bruce told Plaintiff that he would have personnel lay him off, and Plaintiff interpreted this comment to be based on his disability, as well as his age.  (Compl. ¶¶ 19-20.)  The Complaint also alleges that Bruce treated Plaintiff harshly because he did not want to deal with his anxiety disorder.  (Id. ¶ 25.)  Finally, the Complaint alleges that Plaintiff perceived that his supervisors failed to provide him with a work phone and internet access and gave him a poor performance

review because of his disability.  (Id. ¶¶ 17, 26-29.)  We conclude that, even if we infer that Plaintiff's perceptions were correct, these allegations merely describe isolated incidents that do not amount to severe or pervasive discrimination to the extent required for a hostile work environment claim.  Faragher, 524 U.S. at 788 (stating that "offhand comments and isolated incidents" do not alter the conditions of employment); see also Walton, 168 F.3d at 667 and n.4 (affirming the district court's conclusion that there was no hostile work environment where plaintiff's supervisor threatened to fire her, called her "manic-depressive," called her every day for ten days to ask when she was returning to work after being hospitalized, stated that people with mental illnesses have impaired judgment, and forbade other employees from discussing work with her).  Consequently, we grant Defendant's Motion to Dismiss as to Plaintiff's claims that he was subjected to a hostile work environment in violation of the ADA and the PHRA in Counts II and VI.

In sum, we dismiss Counts I through VI of the Complaint insofar as they allege a hostile work environment based on sex, age, and disability in violation of Title VII, the ADA, the ADEA, and the PHRA because these counts neither allege facts that, if true, would show that Plaintiff was subjected to intentional discrimination, nor facts that, if true, would establish that the discrimination Plaintiff suffered was severe or pervasive.

## IV.    CONCLUSION

For the foregoing reasons, we grant Defendant's Motion to Dismiss in part and deny it in part.  Specifically, we deny the Motion as to Defendant's argument that Plaintiff failed to administratively exhaust his claims and Defendant's argument that the Complaint fails to allege that Plaintiff was subjected to adverse employment actions.  We grant the Motion and dismiss the discrimination claims asserted in all counts except Count II because the Complaint fails to

allege facts that show direct evidence of discrimination or that allow an inference of discrimination based on sex (pursuant to Title VII and the PHRA), age (pursuant to the ADEA and PHRA), and disability (pursuant to the PHRA).[9]  We also grant the Motion and dismiss the hostile work environment claims asserted in all counts of the Complaint, as the Complaint does not allege facts that, if true, would establish that Plaintiff was subjected to a hostile work environment in violation of Title VII, the ADEA, the ADA, and the PHRA.

Plaintiff requests leave to amend the Complaint, and we grant that request, as "[l]eave to amend must generally be granted unless equitable considerations render it otherwise unjust." Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)); see also Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) ("[I]f a complaint is vulnerable to a 12(b)(6) dismissal, a District Court must permit a curative amendment unless an amendment would be inequitable or futile." (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002))).  An appropriate Order follows.

BY THE COURT:

/s/John R. Padova
_____
John R. Padova, J.

---

[9] As Defendant has not moved to dismiss Count II of the Complaint insofar as it alleges discrimination based on the ADA, this claim is not dismissed.